UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
DOCKET NO. 5:18-cv-00161-FDW

| | |
|---|---|
| RICHARD LEE TURNER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) ORDER |
| ANDREW SAUL,[1] | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

THIS MATTER is before the Court on Plaintiff's Motion for Summary Judgment (Doc. No. 9) and Defendant's Motion for Summary Judgment (Doc. No. 11). Plaintiff, through counsel, seeks judicial review of an unfavorable administrative decision on his application for supplemental security income under 42 U.S.C. § 405(g).[2] Plaintiff alleges the Administrative Law Judge ("ALJ") erred by failing to weigh the medical opinion of his treating orthopedic specialist, and that the ALJ erred by failing to conduct a proper function-by-function analysis of Plaintiff's impairments, thereby failing to provide a logical bridge between the evidence and the ALJ's conclusions. (Doc. No. 10, p. 6). After careful review, and for the reasons which follow, the Court finds the ALJ did not commit reversible error. Accordingly, Plaintiff's motion (Doc. No. 9) is DENIED, Defendant's motion (Doc. No. 11) is GRANTED, and the Commissioner's decision is AFFIRMED.

---

[1] Although the case was filed when Nancy A. Berryhill was the Acting Commissioner of Social Security, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul, the current Commissioner of Social Security, is substituted as the Defendant. See Fed. R. Civ. P. 25(d).

[2] "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

1

## I. BACKGROUND

Plaintiff filed applications for Title II disability and disability insurance benefits and Title XVI supplemental security income on November 3, 2014. (Tr. 15). In both applications, Plaintiff alleged a disability onset date of November 3, 2014. (Tr. 15). Both claims were denied initially on February 13, 2015, and upon reconsideration on April 27, 2015. (Tr. 15). On May 19, 2015, Plaintiff filed a written request for a hearing before an Administrative Law Judge ("ALJ"), which was ultimately held on April 14, 2017 in Charlotte, North Carolina. (Tr. 15). After the hearing, the ALJ denied Plaintiff's applications in a written decision dated June 30, 2017. (Tr. 24).

In reaching this decision, the ALJ followed the five-step evaluation process for the evaluation of disability claims under the Social Security Act ("the Act"). (Tr. 16-17); 20 C.F.R. §§ 404.1520(a), 416.920(a). At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since November 3, 2014. (Tr. 17). At the second step, the ALJ determined Plaintiff has several "severe impairments," as defined in 20 C.F.R. § 416.920(c). (Tr. 17-18); 20 C.F.R. § 416.920(c) ("You must have a severe impairment. If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled."). Among Plaintiff's impairments, the ALJ found that chronic obstructive pulmonary disorder (COPD), asthma, and status-post total hip replacement and revisions limited Plaintiff's "ability to perform basic work activities." (Tr. 17-18). Although Plaintiff alleged a learning disability, the ALJ found it "is not a medically determinable impairment because it was not assessed by an acceptable medical source and the medical evidence of record generally does not support a finding of said impairment," in addition to Plaintiff conceding "he did not have any

2

intellectual or mental health issues." (Tr. 18). At the third step of the process, the ALJ determined Plaintiff does not have an impairment or combination of impairments that meet or medically equals the severity of any listed impairments found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (hereinafter "The Listings"). (Tr. 18).

The ALJ determined Plaintiff could "perform medium work as defined in 20 C.F.R. [§§] 404.1567(c) and 416.967(c)" despite his impairments. (Tr. 19). In his residual functional capacity ("RFC") analysis, the ALJ added that Plaintiff "is limited to the occasional climbing of ladders and the claimant should avoid concentrated exposure to extreme cold, and fumes." (Tr. 19). Proceeding to the fourth step, the ALJ ruled Plaintiff was unable to perform any past relevant work. (Tr. 22). At the fifth step, and considering Plaintiff's age, education, work experience, RFC, and the Vocational Expert's ("VE") testimony, the ALJ determined Plaintiff could perform "jobs that exist in significant numbers in the national economy," including packer, bagger, and checker. (Tr. 23). Addressing the inconsistencies between the VE's testimony and the information from the Dictionary of Occupational Titles ("DOT"), the ALJ decided "there [was] a reasonable explanation for the discrepancy," namely that the VE's testimony was based on her training and experience. (Tr. 23-24). Accordingly, the ALJ decided Plaintiff was not disabled under the Act. (Tr. 24).

After receiving the ALJ's decision, Plaintiff filed a request for review by the Appeals Council, which was denied on August 2, 2018. (Tr. 1). Upon this denial, the ALJ's decision became the final decision of the Commissioner. Plaintiff brought the suit before the Court to challenge the Commissioner's decision, and this case is now ripe for judicial review under 42 U.S.C. § 405(g).

3

## II. STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code provides judicial review of the Social Security Commissioner's denial of social security benefits: "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). When examining a disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence. Id.; Westmoreland Coal Co., Inc. v. Cochran, 718 F.3d 319, 322 (4th Cir. 2013); Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012). A reviewing court may not re-weigh conflicting evidence or make credibility determinations because "it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (alteration and quotations omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015) (internal quotation marks omitted). Courts do not reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence; "[w]here conflicting evidence allows reasonable minds to differ," courts defer to the ALJ's decision. Johnson, 434 F.3d at 653.

"In order to establish entitlement to benefits, a claimant must provide evidence of a medically determinable impairment that precludes returning to past relevant work and adjustment to other work." Flesher v. Berryhill, 697 F. App'x 212, 212 (4th Cir. 2017) (per curiam) (citing 20 C.F.R. §§ 404.1508, 404.1520(g)). In evaluating a disability claim, the Commissioner uses a five-step process. 20 C.F.R. § 404.1520(a)(4). Pursuant to this five-step process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, could perform any other work in the national economy. Id.; see also Lewis v. Berryhill, 858 F.3d 858, 861 (4th Cir. 2017) (citing Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015)); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. See Lewis, 858 F.3d at 861; Monroe v. Colvin, 826 F.3d 176, 179–80 (4th Cir. 2016).

The Fourth Circuit has held:

> If the claimant fails to demonstrate she has a disability that meets or medically equals a listed impairment at step three, the ALJ must assess the claimant's residual functional capacity ("RFC") before proceeding to step four, which is "the most [the claimant] can still do despite [her physical and mental] limitations [that affect h[er] ability to work]."

Lewis, 858 F.3d at 861-62 (quoting 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)) (alterations in original).

In Lewis, the Fourth Circuit explained the considerations applied before moving to step four:

> [The RFC] determination requires the ALJ to "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on

> a function-by-function basis, including the functions listed in the regulations." Mascio, 780 F.3d at 636 (internal quotations omitted); see also SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). Once the function-by-function analysis is complete, an ALJ may define the claimant's RFC "in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1. See generally 20 C.F.R. §§ 404.1567, 416.967 (defining "sedentary, light, medium, heavy, and very heavy" exertional requirements of work).
>
> When assessing the claimant's RFC, the ALJ must examine "all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," 20 C.F.R. §§ 404.1525(a)(2), 416.925(a)(2), "including those not labeled severe at step two." Mascio, 780 F.3d at 635. In addition, he must "consider all [the claimant's] symptoms, including pain, and the extent to which [her] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529(a), 416.929(a). "When the medical signs or laboratory findings show that [the claimant has] a medically determinable impairment(s) that could reasonably be expected to produce [her] symptoms, such as pain, [the ALJ] must then evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [her] symptoms limit [her] capacity for work." 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

Lewis, 858 F.3d at 862.

Proceeding to step four, the burden remains with the claimant to show he or she is unable to perform past work. Mascio, 780 F.3d at 635. If the claimant meets their burden as to past work, the ALJ proceeds to step five.

> "At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." [Mascio, 780 F.3d at 635] (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429). "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." Id.

Lewis, 858 F.3d at 862.

If the Commissioner meets this burden in step five, the claimant is deemed not disabled, and the benefits application is denied. Id.

6

## III. ANALYSIS

In his memorandum supporting his motion for summary judgment, Plaintiff alleges the ALJ failed in two ways. First, he contends the ALJ erred by failing to weigh, or even mention, the medical opinion assigned by Plaintiff's treating orthopedic specialist from 2004. (Doc. No. 10, p. 6). Second, he argues the ALJ failed to conduct a proper function-by-function analysis and failed to provide a logical bridge between the evidence, his conclusions, and RFC findings. Id. at 8. Each argument is addressed in turn below.

### A. The Orthopedic Specialist's 2004 Opinion

Plaintiff contends the ALJ's failure to weigh or even mention, the medical opinion of and physical restrictions assigned by his treating orthopedic specialist from 2004 constitute reversible error. (Doc. No. 10, p. 6). The Commissioner argues that any impairments related to this treatment did not prevent Plaintiff from performing other work, and thus the opinion was not entitled to controlling weight or other special significance. (Doc. No. 12, p. 6).

The Social Security regulations make clear that if a claimant is "working and the work [the claimant is] doing is substantial gainful activity, [the Commissioner] will find that [the claimant is] not disabled regardless of [the claimant's] medical condition or [the claimant's] age, education, and work experience." 20 C.F.R. § 404.1520(b). The Fourth Circuit has made clear that evidence of a claimant's "continued work activities and daily physical activities also support the ALJ's conclusion" that a claimant is unable to return to former work. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992).

The regulations are similarly clear that the Commissioner "will evaluate every medical opinion [he] receive[s]." 20 C.F.R. § 404.1527(c). Courts have consistently held it to be error

7

when the ALJ fails to evaluate an opinion in the record. E.g., Jolley v. Colvin, No. 1:14-CV-00230-GCM, 2016 WL 633412, at *4 (W.D.N.C. Feb. 17, 2016); Allen v. Colvin, No. 1:13-CV-00177-MOC, 2014 WL 496474, at *3 (W.D.N.C. Feb. 6, 2014) ("Generally, failure by the Commissioner to consider an entire line of evidence falls well below the minimal level of articulation required by the Social Security Act."). This duty is balanced, however, by the practical reality that it is not possible or feasible for an ALJ to "discuss every piece of evidence." Vance v. Colvin, No. 1:13-CV-186-RJC, 2014 WL 838906, at *3 (W.D.N.C. Mar. 4, 2014); see also Allen, 2014 WL 496474, at *3. Accordingly, such error is harmless where the evidence would not have caused the ALJ to reach a different outcome. See Brown v. Colvin, No. 1:13-CV-96-GCM, 2014 WL 4666978, at *7 (W.D.N.C. Sept. 18, 2014) (noting it was error for the ALJ to fail to mention medical opinions, but holding the error to be harmless because the opinions "ultimately concluded that Plaintiff was not disabled"), vacated and remanded on other grounds, Brown v. Colvin, 639 F. App'x 921 (4th Cir. 2016) (per curiam); Jones v. Colvin, No. 1:13-CV-212-RLV-DCK, 2014 WL 4265926, at *8 (W.D.N.C. June 6, 2014) (magistrate judge memorandum and recommendation) (addressing a medical source's records, even if not citing to the source's "opinion," is sufficient), adopted by Jones v. Colvin, No. 1:13CV212-RLV, 2014 WL 4266306 (W.D.N.C. Aug. 27, 2014); Vance, 2014 WL 838906, at *3 (upholding the ALJ's review of the plaintiff's doctor's visit without explicitly discussing the doctor's statements). On the other hand, courts have found harmful error where an ALJ fails to address a primary care physician's separate opinion, which was not coordinated with another medical source's opinion, Finger v. Berryhill, No. 1:17CV188, 2018 WL 1128518, at *5 (M.D.N.C. Feb. 26, 2018) (magistrate judge memorandum and recommendation); where an ALJ fails to address a medical source's opinion

8

regarding the claimant's physical condition and that source shared a similar view as another source the ALJ discredited because "it seemed to contradict the other medical opinions" in the record, Jolley, 2016 WL 633412, at *4; and where an ALJ "completely missed the favorable opinion of one of [P]laintiff's treating physicians that appears to be based on series of in-office visits and objective observations," Allen, 2014 WL 496474, at *3.

Here, there is no dispute the ALJ failed to explicitly mention the opinion of Dr. Byron E. Dunaway, who treated Plaintiff leading up to and after hip replacement surgery in 2004. (Doc. No. 10, p. 6; Doc. No. 12, p. 5). The ALJ did, however, cite to treatment notes by Dr. Dunaway in the aftermath of Plaintiff's hip replacement surgery. (Tr. 21) (citing to Exhibit "7F/23, 25, 59, and 91," which includes Dr. Dunaway's notes at follow-up visits with Plaintiff after the hip replacement surgery). In the context of Plaintiff's follow-up visits, the ALJ noted "[t]he claimant complained of hip pain at some follow-up appointments but the evidence generally shows success of surgery with controlled symptoms," (Tr. 21), which is consistent with what Dr. Dunaway stated at various points throughout his treatment of Plaintiff. E.g., (Tr. 511 ("[Claimant] is doing well with his right total hip"), 517 ("He has no leg weakness or low back pain. He is doing well with his job")). Although the ALJ would have been well-served to explicitly refer to Dr. Dunaway's medical opinion as a treating source, the issue here is similar to the issue in Jones, namely that an ALJ's discussion of a medical source's records is sufficient for a reviewing court to uphold the Commissioner's decision, even if the ALJ does not discuss the source's "opinion." Jones, 2014 WL 4265926, at *8. As the ALJ referred to Dr. Dunaway's records, the ALJ did not commit reversible error.

Plaintiff makes particular note of Dr. Dunaway's notation of "permanent restriction[s]" of twenty pounds lifting, no squatting, and no climbing. (Tr. 527; Doc. No. 10, p. 7). In addition to the fact the ALJ referenced treatment notes—albeit vaguely—from Dr. Dunaway, the Court is likewise unpersuaded the ALJ's failure to discuss these restrictions constitutes harmful error requiring reversal. The restrictions listed by Dr. Dunaway were listed as part of his notes from August 24, 2004—which was within one month of Plaintiff's surgery and prior to his return to work. (Tr. 527). As part of this same collection of notes, the doctor established September 17, 2004 as the date when Plaintiff would return to the work he did prior to the hip surgery, which at the time was a chair manufacturing job. (Tr. 525, 527, 32). As part of this employment, Plaintiff stated he lifted twenty pounds frequently and up to seventy-five pounds. (Tr. 181, 188). Plaintiff continued this type of work for several years after surgery. (Tr. 180). Moreover, on September 15, 2004, Dr. Dunaway stated Plaintiff could "return to full unrestricted duty" the following day, September 16. (Tr. 525). Even had the ALJ assigned great or substantial weight to Dr. Dunaway's opinion or portions thereof, it is unlikely to have changed his decision. Viewed most logically, the September 15 note that Plaintiff is to return to full duty without restriction supersedes the prior month's notation of restrictions. (Tr. 525, 527).[3] Alternatively, if the restrictions were to remain in place permanently, then not only would Dr. Dunaway have contradicted himself, but his opinion would be inconsistent with the record. See (Tr. 22) (assigning little weight to medical source opinions or portions thereof inconsistent with record evidence that Plaintiff "has some hip pain,

---

[3] The Commissioner contends "it is only logical to conclude that Dr. Dunaway's notation about 'permanent' weight and manipulative limitations applied only for the period of healing until he released [P]laintiff to return to work." (Doc. No. 10, p. 10). The Court is hesitant to accept such a proposition because, as the late Honorable H. Brent McKnight was fond of observing, "words have meaning." Baker & Taylor, Inc. v. Griffin, No. 3:12-cv-00553-MOC, 2015 WL 1307293, at *2 (W.D.N.C. Mar. 23, 2015). Thus, it is difficult to square a "permanent" restriction with one that expires approximately one month after the notation of the restriction.

although infrequent and relatively controlled with medication"). Moreover, in his work history report, Plaintiff himself conceded that he lifted up to seventy-five pounds for his job, which, again, lasted for several years after Dr. Dunaway's treatment. (Tr. 188). Accordingly, any error committed by the ALJ in not explicitly discussing Dr. Dunaway's opinion from 2004 was harmless.

### B. The ALJ's RFC Analysis

Plaintiff's second assignment of error is that the ALJ failed to conduct a proper function-by-function analysis of Plaintiff's impairments and failed to provide a logical bridge between the record evidence, the ALJ's conclusions, and RFC findings. (Doc. No. 10, p. 8). The Commissioner argues the ALJ's RFC findings are supported by substantial evidence and were properly conducted. (Doc. No. 12, p. 8).

Plaintiff alleges several errors by the ALJ relating to his RFC analysis: the ALJ failed to include a narrative discussion pursuant to SSR 96-8p; the ALJ's review of Plaintiff's daily activities and part-time work activity was flawed; the ALJ failed to factor Plaintiff's cane usage and back pain in his findings; and finally, the ALJ erred by failing to indicate how he arrived at his RFC conclusions regarding Plaintiff's ability to climb and exposure to cold and fumes. (Doc. No. 10, p. 9-12). Plaintiff also summarily concludes "the ALJ's dismissal of his learning disability is erroneous." Id. at 2. These alleged errors, according to Plaintiff, constitute error as a matter of law for failure to provide a logical bridge between the evidence in the record, the ALJ's conclusions, and RFC findings, or in the alternative, that it prevents the ALJ's conclusions about Plaintiff's RFC from being supported by substantial evidence. Id. at 8.

Under the Agency's regulations, an ALJ, when evaluating a claimant's RFC, "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7. As the Fourth Circuit has made clear, remanding a case "may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Mascio, 780 F.3d at 636 (omission in original) (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). Where an ALJ bases his RFC findings, at least in part, on the function-by-function analysis of a State agency consultant, the ALJ's function-by-function analysis complies with SSR 96-8p. Linares v. Colvin, No. 5:14-CV-00120, 2015 WL 4389533, at *3 (W.D.N.C. July 17, 2015).

As part of this "accurate and logical bridge from the evidence to his conclusion," Monroe, 826 F.3d at 189 (quotations omitted), the ALJ is required to discuss not only the activities performed by a claimant, but is also required to discuss the extent to which the claimant is able to perform them. Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 269 (4th Cir. 2017). In other words, the "ALJ may not consider the *type* of activities a claimant can perform without also considering the *extent* to which [the claimant] can perform them." Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018). In Brown, the Fourth Circuit remanded the case because the ALJ simply noted "various of [the claimant's] activities—such as 'cooking, driving, doing laundry, collecting coins, attending church and shopping'—but did not acknowledge the limited extent of those activities as described by [the claimant] or explain how those activities showed that he could sustain a full-time job." Brown, 873 F.3d at 269. Because the listing of these activities could not

12

show the claimant's ability to engage in substantial gainful activity or contradicted claims of disabling pain, the ALJ failed to build the accurate and logical bridge required. Id. at 269-70. In Woods, the Fourth Circuit also remanded the case because the ALJ, while again discussing the type of activities, failed to discuss the extent to which the claimant was capable of doing them. Woods, 888 F.3d at 694-95.

When an ALJ "evaluat[es] a claimant's ability to do other work with an RFC assessment less than a full range of sedentary work, 'there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing' to determine a hand-held device (i.e., a cane) is required." Nalley v. Saul, No. 1:18-cv-00301-FDW, 2019 WL 6598221, at *6 (W.D.N.C. Dec. 4, 2019) (quoting SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996)). Under SSR 96-9p, the claimant bears the burden of presenting sufficient evidence that establishes the need for a cane and the circumstances under which it is required. Gilmer v. Berryhill, No. 3:17-cv-539-FDW, 2018 WL 3518470, at *2 (W.D.N.C. July 20, 2018). "Absent a doctor's prescription, a claimant's self-prescribed cane usage is merely a specific subjective complaint that must be substantiated by the objective medical evidence, and the ALJ is not obligated to perform a medical necessity analysis" under SSR 96-9p. Christon v. Colvin, No. 3:15-cv-00305-RJC, 2016 WL 3436423, at *5 (W.D.N.C. June 15, 2016). In Christon, the plaintiff lacked a prescription for cane usage, and the Court determined any such use was a subjective complaint to be considered as part of the credibility analysis. Id. Similarly, in Gilmer, the Court determined that without a doctor's prescription, and given that the ALJ cited to a medical source opinion observing the plaintiff did not use a cane, the ALJ's RFC conclusions were properly supported by substantial evidence. Gilmer, 2018 WL 3518470, at *2.

In his opinion, the ALJ discussed Plaintiff's alleged disabilities as reported in Plaintiff's disability report. (Tr. 19). Specifically, the ALJ noted Plaintiff alleged "disability due to lung problems, right wrist carpal tunnel, right hip problems, right knee problems, high blood pressure, sleep apnea, and a learning disability." (Tr. 19). The ALJ then went on to note that Plaintiff "prepares his own meals daily, and that it takes 20 to 30 minutes to prepare meals," in addition to Plaintiff's report that his brother helped him with house and yard work, Plaintiff goes outside "all of the time and is able to drive a car," and "[h]e has difficulty lifting, walking, and stair climbing." (Tr. 19). As the ALJ continued, he wrote that Plaintiff "had a total right hip replacement" and "needed a revision surgery" before discussing, in depth, the medical evidence surrounding Plaintiff's hip surgeries and treatment, which includes x-rays and discussion of follow-up appointments. (Tr. 19, 21). From this point, the ALJ found "the claimant's complaints of disabling hip pain are inconsistent with the record," and after finally evaluating medical source opinions, the ALJ explained his RFC assessment was supported by the evidence in the record. (Tr. 22). The ALJ performed substantially the same analysis with regard to Plaintiff's breathing and pulmonary issues as well, mentioning Plaintiff's lung problems and smoking habits, and also discussing the fact that Plaintiff "gets short-winded when working." (Tr. 19). Again, the ALJ turns to medical evidence, which includes chest x-rays, smoking, and treatment compliance, the latter of which the ALJ stated "the evidence seems to indicate that a modality of treatment options control symptoms so that the claimant may engage in activity." (Tr. 20). Based on the evidence, the ALJ found "no concentrated exposure to cold and fumes due to the claimant's document [sic] respiratory impairments," and "that no additional limitations are supported by the record." (Tr. 20). The ALJ finally noted that, with respect to pulmonary issues, the medical opinion of consultative examiner

14

Dr. Young—at least the portion that indicated Plaintiff should avoid cold temperatures and fumes—was consistent with the evidence in the record. (Tr. 22). Once again, the ALJ conducted a narrative discussion that created a logical bridge from the evidence in the record to his conclusion.

Plaintiff's argument that the ALJ failed to consider the extent to which Plaintiff can perform his daily activities, (Doc. No. 10, p. 10-11), is not substantiated by the written opinion. The ALJ noted "it takes 20 to 30 minutes to prepare meals," and that his "breather [sic] helps him perform house and yard work." (Tr. 19). Plaintiff's argument that Plaintiff relied on his "brother" and not "breather" is without merit; although Plaintiff uses a breathing machine to help when he sleeps, the context in which the ALJ made this statement clearly indicates it is a typographical error. (Tr. 19). Furthermore, contrary to Plaintiff's assertion that the ALJ erred by not discussing concentration problems, (Doc. No. 10, p. 11), Plaintiff himself, in his Adult Function Report, noted no issues with his concentration, memory, or ability to complete tasks. (Tr. 205). As it pertains to physical limitations, the ALJ explicitly stated Plaintiff "has difficulty lifting, walking, and stair climbing and can only lift 15 to 20 pounds." (Tr. 19). Based on the Plaintiff's testimony at the hearing, the ALJ further noted Plaintiff sometimes has pain when he walks, has hip pain, and becomes short-winded when walking. (Tr. 19). This discussion goes beyond the mere listing of daily activities, see Brown, 873 F.3d at 269, and instead clearly demonstrates the ALJ considered the extent to which Plaintiff could perform his daily activities. To the extent the ALJ did not discuss Plaintiff's occasional difficulty dressing and performing personal hygiene, any error is harmless because the ALJ explicitly considered Plaintiff's several, more limiting impairments.

(Doc. No. 10, p. 11); (Tr. 201) (indicating plaintiff had a "low" impact from his impairments on dressing and bathing).

Next, Plaintiff contends the ALJ erred by not reconciling evidence of Plaintiff's difficulty sustaining part-time work with his RFC findings. (Doc. No. 10, p. 11-12). It is apparent that the ALJ did, in fact, discuss this issue in his written opinion. After discussing in depth the medical evidence in the record, in addition to the extent Plaintiff is able to conduct his daily activities, the ALJ determined "a limitation to medium work most consistent with the medical evidence of record." (Tr. 21). Specifically, the ALJ observed Plaintiff indicated improvement with pain in his left hip by early 2015 and improvement with pain in his right hip throughout 2016, which overall was generally controlled. (Tr. 21). Based on successful hip surgery, normal objective examinations, x-rays showing "normal alignment of the hip," and normal musculoskeletal exams dating back to 2014, the ALJ decided that "[i]n considering these relatively normal findings upon examination and objective testing . . . the evidence shows improvement of hip pain post-operatively and does not support the claimant's allegation of inability to work." (Tr. 21). As a separate matter, the ALJ further observed "the claimant reported loss of job due to incarceration, not disabling impairments. This shows that the claimant's symptoms did not cause the claimant's loss of employment." (Tr. 21). Additionally, the ALJ gave some weight to the opinion of Dr. Young, who noted Plaintiff lost his job due to incarceration, not due to injury or disability. (Tr. 22, 422). The Court notes to the extent there is conflicting evidence or the ALJ did not find Plaintiff's testimony or allegations credible, the Court will not reevaluate the ALJ's decision, as it is outside the jurisdiction of the Court. <u>Hays</u>, 907 F.2d at 1456. As discussed above, the ALJ

based his decision—and offered explanations of his RFC findings—based on substantial evidence in the record.

Plaintiff's third argument with respect to the ALJ's RFC findings regarding cane usage and chronic back pain is also misplaced. As far as cane usage, Plaintiff conceded at his hearing that the cane was not prescribed. (Tr. 36). Accordingly, the ALJ was not required to conduct a medical necessity analysis, see SSR 96-9p, 1996 WL 374185, at *7; see also Nalley, 2019 WL 6598221, at *6; Gilmer, 2018 WL 3518470, at *2, and instead properly evaluated Plaintiff's cane usage as part of his subjective complaints and credibility analysis. (Tr. 19). With respect to his allegation of error that the ALJ failed to consider his chronic back pain, Plaintiff's argument is self-defeating. First, and as discussed in Section III-A above, the ALJ considered the treatment notes of Dr. Dunaway, who noted Plaintiff's back pain (and to whose notes Plaintiff cites when alleging error). See, e.g., (Doc. No. 10, p. 12); (Tr. 21, 454-56). These treatment notes, in their entirety, include discussion of Plaintiff's back pain. (Tr. 454-56). As the Court in Jones articulated, the ALJ's reference to treatment notes, even if there is no reference to the medical "opinion," is permissible. Jones, 2014 WL 4265926, at *8. Second, Dr. Dunaway—in those same treatment notes—stated "[h]is back does not give him so much discomfort. I had considered doing a lumbar MRI, but he really feels great now." (Tr. 452). In other words, the same doctor that diagnosed the back pain later indicated—based on Plaintiff's representations—the pain had subsided and no longer caused Plaintiff problems. Thus, the error committed by the ALJ—if any—was harmless.

Plaintiff's final specific assignment of error with respect to the RFC analysis is that the ALJ committed error regarding Plaintiff's exposure to climbing, cold, and fumes. (Doc. No. 10,

p. 12). With regard to climbing, Plaintiff argues "the ALJ fails to address Dr. Rossing's other conclusions that [Plaintiff] would be limited to frequent postural activities and does not adopt these restrictions in the RFC." Id. at 12-13 (internal citations omitted). As Dr. Rossing limited Plaintiff to "frequent" postural activities (Tr. 67) and the ALJ's RFC assessment limited Plaintiff to "occasional climbing," (Tr. 19), there is no error. Specifically as to exposure to cold and fumes, Plaintiff contends that, although the ALJ assigned "great weight" to the portion of the consultative examiner, Dr. Young's, opinion that Plaintiff have limitations "for working around chemicals, dust, fumes, and gas," (Tr. 425), the ALJ only adopted a restriction that Plaintiff "avoid[s] concentrated exposure to extreme cold, and fumes." (Tr. 19). In his assessment, Dr. Young further elaborated that his opinion was based on the fact "the claimant has a history of pulmonary difficulties and it would be unwise to expose him to any *unnecessary* caustic chemicals, dust, fumes or gases which may exacerbate his symptoms." (Tr. 425-26) (emphasis added). Of note, the consultative examiner did not categorically recommend no exposure to any pulmonary irritants. The ALJ, in weighing Dr. Young's opinion, noted the relevant portion of the opinion "is supported by the claimant's longitudinal medical history showing COPD and asthma that would be exacerbated by exposure to respiratory irritants. The undersigned reconciled this portion of Dr. Young's opinion with the residual functional capacity determination in limiting the claimant's exposure to fumes and extreme cold." (Tr. 22) (internal citations omitted). With respect to the ALJ's findings regarding exposure to cold and fumes, Plaintiff essentially asks the Court to re-weigh the evidence to find it contradictory, which the Court cannot—and will not—do. Johnson, 434 F.3d at 653. The ALJ based his pulmonary conclusions on the relevant portion of Dr. Young's opinion and was therefore supported by substantial evidence.

As briefly mentioned above, Plaintiff summarily concluded the ALJ's dismissal of his alleged learning disability was in error. (Doc. No. 10, p. 2). Although Plaintiff did not expand on this issue, the Court has nonetheless considered it. While discussing Plaintiff's impairments, the ALJ specifically found "this alleged learning disability is not a medically determinable impairment because it was not assessed by an acceptable medical source and the medical evidence of record generally does not support a finding of said impairment." (Tr. 18). "Moreover," the ALJ continued, "the evidence indicates that the claimant was contacted regarding his allegation of a learning disability and the claimant's response was that he did not have any intellectual or mental health issues." (Tr. 18); see also (Tr. 51) (Plaintiff "quickly" denied any special education classes for a learning disability or mental health issues). As Plaintiff does not identify where in the record an acceptable medical source diagnosed this disability and otherwise does not expound on the conclusory allegation, the Court will not "min[e] facts from the medical record." Brown, 639 F. App'x at 922.

After careful review of the ALJ's opinion, the Court is satisfied the ALJ met his burden of creating a narrative discussion and logical bridge from the evidence to the conclusion. In the interest of judicial economy, because the Court extensively reviewed the ALJ's decision and the evidence on which he based it, and for the reasons stated above, the Court finds the ALJ's decision is also supported by substantial evidence.

### IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (Doc. No. 9) is DENIED, Defendant's Motion for Summary Judgment (Doc. No. 11) is GRANTED, and the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

Signed: March 24, 2020

Frank D. Whitney
Chief United States District Judge